**PITTSBURGH GREENTREE MARRIOTT and Home Insurance Company, Petitioners,**

v.

**WORKMEN'S COMPENSATION APPEAL BOARD (McVAY), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Dec. 9, 1994.

Decided April 17, 1995.

Reargument Denied May 30, 1995.

**1328**

Edward C. O'Hearn, for petitioners.

Glenn G. Gezovich, for respondent.

Before DOYLE and KELLEY, JJ., and NARICK, Senior Judge.

KELLEY, Judge.

Pittsburgh Greentree Marriott (Marriott) and its insurer, Home Insurance Company (HIC), appeal from a decision of the Workmen's Compensation Appeal Board. The board affirmed a referee's decision ordering Marriott to pay compensation, litigation costs, and attorney's fees to its employee, Carol L. McVay (claimant).

On January 24, 1992, claimant filed a claim petition alleging that she suffered a disabling injury to the lower back on November 9, 1991, during the course of her employment with Marriott. Marriott and HIC filed a timely answer denying the material allegations set forth in the petition. HIC subsequently filed a petition for joinder. In this petition, HIC alleged that claimant's disability was the result of a recurrence of an injury incurred on November 19, 1989, at which time, CIGNA Property and Casualty Company (CIGNA) was Marriott's insurer. In a timely answer, CIGNA denied the material allegations contained in the joinder petition. Claimant requested attorney's fees on the basis of an unreasonable contest, pursuant to sections 440 and 442 of The Pennsylvania Workmen's Compensation Act (Act).[1]

After several hearings, the referee made the following findings of fact:

1. The claimant; James Newell, her restaurant supervisor; and Pegg Sovak, the employer's director of human resources, testified in this case. Each testified credibly in some respects. Where their testimony differs, your referee has found the claimant the most credible witness. Each has testified honestly, but only the claimant was present in the dining room for her entire shift on November 9, 1991.

2. In November, 1989, the claimant injured her back working for the Greentree Marriott lifting a heavy crate of orange juice containers. Her employer was aware of her injury, because she left work in an ambulance. Although the employer paid her medical bills, no Bureau documents were filed in connection with this work injury.

3. At the time of the November, 1989 work injury, the claimant was working as a waitress. Her job involved walking up and down stairs fifty times per day, reaching, lifting and carrying heavy trays weighing 10–30 pounds, and moving heavy tables. She earned an average weekly wage of $265.53, with a resulting compensation rate of $199.50.

4. The claimant continued to work at her waitress job after she was off work only six days. She did not take medication or receive medical treatment until she was reinjured on November 9, 1991. The claimant had some stiffness in her back since lifting at home the night before. She also

1. Act of June 2, 1915, P.L. 736, *as amended*, 77  P.S. §§ 996, 998.

had some back pain of the type she generally associated with her menstrual period.

6. On November 9, 1991, the claimant was unusually busy at work, and had to lift a number of extremely heavy trays. While working she noticed a new, more severe, sharper pain. She finished her shift with difficulty. That evening, she called her supervisor at home and notified him that she had injured her back at work. Later, she called Pegg Sovak and notified her as well. On this date, the claimant earned an average weekly wage of $209.08, with a resulting compensation rate of $188.17.

7. Thomas H. Crews, D.C., saw the claimant at Pegg Sovak's suggestion. He based his opinion and testimony on the claimant's history, examination and x-rays. On examination, he noted severe muscle spasm. He referred the claimant for an MRI, and based thereon diagnosed a herniated disc. He treated the claimant's condition with cold, ultrasound, and "trigger point" therapy. It was Dr. Crews' opinion that due to the cumulative effect of heavy lifting and carrying heavy trays all day on November 9, 1991, the claimant was injured and became unable to perform her work as a waitress. He did not believe that the claimant's disability was due to the earlier incident lifting laundry. Your referee credits Dr. Crews' opinion, which is consistent with the claimant's history, and with the opinion of Gerald P. Durkan, M.D., the claimant's treating neurologist.

8. Gerald P. Durkan, M.D., who is Board certified in neurology, psychiatry and emergency medicine, first saw the claimant on November 13, 1991. Based on the claimant's work history, examination, symptoms, May 14, 1992 CT scan and myelogram, EMB, and nerve conduction studies, Dr. Durkan diagnosed herniated discs at L5–S1. He treated the claimant with steroids and rest, and then referred her to Dr. Baghai, a neurosurgeon, because he thought her a surgical candidate. He found her unable to perform her work as a waitress, due to the November 9, 1991 injury, which resulted from lifting heavy trays. He was certain that this was not a recurrence of the 1989 injury, because of the severe spasm and acute worsening of her pain in 1991. Your referee credits Dr. Durkan's opinion, which is consistent with the credible testimony of Dr. Crews, and the credible testimony of the claimant. In so doing, your referee notes that both of these witnesses have actually treated the claimant, while Dr. Richter, whose testimony is less credible, has not.

9. Paul L. Richter, M.D., a Board certified neurologist, saw the claimant on one occasion at the request of the HIC. He based his opinion on the claimant's history, x-rays, CT Scan and MRI. He agreed that the claimant had herniated discs at L5–S1, but attributed her injury and disability to the 1989 injury, primarily because he viewed the lifting of orange crates as a more significant trauma than the repeated lifting and carrying of heavy trays. On cross examination, Dr. Richter did state that it was possible that lifting a 30 pound tray could cause a disc herniation. He did not adequately explain how an individual with such an acute injury could have worked a difficult waitress job for two years, without requiring medication or treatment. Further, Dr. Richter stated that he would have been interested to see if the claimant's spine had been tilted to the right after the 1989 incident as it was when he examined her. Your referee notes that a St. Clair Hospital, reading of the claimant's November 19, 1989 stated that "alignment is satisfactory." For these reasons, your referee finds Dr. Richter's testimony less reliable than that of the other medical witnesses.

10. Based on the credible testimony of the claimant and Drs. Crews and

Durkan, your referee finds that due to repetitive lifting and carrying at work on November 9, 1991, the claimant became totally disabled, effective November 9, 1991, while HIC was the carrier.

11. HIC's contest was not reasonable, because all of the medical evidence in this case supports the claimant's allegation that she was injured in the course of her employment with the defendant/employer Pittsburgh Greentree Marriott. The defendant employer and the liable carrier HIC failed to so stipulate, (Joint Exhibit 1). Had such a stipulation been made the claimant would have been able to receive compensation while the carriers litigated the issue of which work injury caused the disability.

12. The claimant and her counsel have a reasonable 20% fee agreement. Your referee finds this fee to be appropriate for an award of counsel fees as costs, based upon the amount of work performed and the usual fee charge for this type of case in this area.

13. The claimant by her counsel, incurred $2,127.70 in reasonable costs, litigating this petition.

Based on these findings, the referee determined that claimant had satisfied her burden of establishing that she suffered a disabling injury on November 9, 1991, during the course of her employment with Marriott. Accordingly, the referee ordered Marriott and HIC to pay claimant compensation at a rate of $188.17 per week. In addition, the referee concluded that Marriott and HIC had failed to satisfy their burden of proving a reasonable contest. Therefore, the referee ordered Marriott and HIC to pay claimant's counsel $2,127.70 in litigation costs and an amount equal to 20% of claimant's compensation for attorney's fees. The board affirmed the decision of the referee. This appeal followed.

On appeal to this court, Marriott and HIC[2] raise the following issues: 1.) whether the board committed an error of law in af-

firming the legal conclusion that employer's contest was unreasonable; and 2.) whether the board committed an error of law in affirming an award of attorney's fees as costs against employer.

▪ In workers' compensation cases, our scope of review is limited to determining whether constitutional rights were violated, an error of law was committed, appeal board procedure was violated, and necessary findings of fact were supported by substantial evidence. *Lehigh County Vo–Tech School v. Workmen's Compensation Appeal Board (Wolfe)*, 539 Pa. 322, 652 A.2d 797 (1995).

▪ A claimant who prevails in a workers' compensation case is entitled to attorney's fees unless the evidence in the record establishes that the contest had a reasonable basis. *Hill v. Workmen's Compensation Appeal Board (Lentz Milling Co.)*, 146 Pa.Commonwealth Ct. 524, 606 A.2d 614 (1992). The burden of proving a reasonable contest is upon the employer. *Cunningham v. Workmen's Compensation Appeal Board (Franklin Steel Co.)*, 159 Pa.Commonwealth Ct. 622, 634 A.2d 267 (1993). A contest is considered reasonable when its purpose is to resolve a genuinely disputed issue and not merely to harass claimant. *Mercy Catholic Medical Center v. Workmen's Compensation Appeal Board (Fry)*, 114 Pa.Commonwealth Ct. 218, 538 A.2d 636 (1988).

▪ In the present case, employer argues that it contested the claim petition in order to resolve a genuinely disputed question. We disagree.

Employer maintains that the testimony presented by its lay witnesses raises a justifiable issue as to whether claimant was injured in the course of her employment on November 9, 1991. In support of this argument, employer directs our attention to the testimony of its restaurant supervisor, James J. Newell, and its Human Resource Director, Peg Sovak.

Newell testified that he was at the restaurant during claimant's shift on November 9, 1991, and that claimant did not inform him of any work-related incident or accident. Re-

**2.** Hereinafter, both petitioners will be referred to   collectively as "employer."

produced Record (R.) at 44A. He further testified that claimant called him later that evening to report that she would not be working the following day because of back pain that "could be related to her kidneys." R. at 45A. Finally, Newell stated that claimant did not mention her work-related injury during the telephone conversation. *Id.*

Sovak testified that claimant told her that she "first noticed the pain" while lifting a wash basket into her car on November 8. R. at 46A. Sovak further stated that claimant informed her that she was hurt at work on November 9. *Id.* Sovak also testified that when she asked claimant specifically how the injury had occurred, claimant "was sort of general about it." R. at 47A. She said that claimant could not tell her "exactly when it happened or what in particular happened." *Id.*

The record contains some inconsistencies between the testimony of these two witnesses and that of claimant. The following testimony was presented by claimant:

Q Let's be a little more clear now. You said the night before on November 8th, you had picked up a basket of clothing?

A Uh-huh (indicating affirmatively).

Q And you had pain in your back?

A Like stiffness. I didn't think anything of that because I was due for my period.

R. at 11A.

Claimant ultimately testified concerning the events of November 9, 1991:

Q You did have a little bit of low back pain then when you started your shift?

A Yeah.

Q You started at what time?

A At I think it was 6:30 that day.

. . . .

Q You worked through—

A Until three o'clock that day.

Q There was no specific incident that you have testified to that caused you to stop working; is that correct?

A Well, like I said, I couldn't stop working. In fact, when I hurt myself, it was a complete different pain than what I had in the morning, totally different. There was

two people. Even our supervisor wasn't there. I couldn't drop everything. The more I worked, the more pain I was in.

Q There wasn't a tray of something that you had lifted?

A Yes.

Q Was there?

A Yes. Because I had like eight tables all at once. And like I always did whenever I had a lot of tables and a lot of orders, I piled them up like I always do. Like nine, I would say around nine dishes I carried at one time. That's when I really felt it. I said, "something is wrong."

. . . .

Q I believe you testified that you informed your supervisor the night of the accident.

A Uh-huh (indicating affirmatively).

Q Is that correct? A gentleman by the name of Jim Newell?

A Uh-huh (indicating affirmatively).

Q You informed him you had hurt your back that day?

A Uh-huh (indicating affirmatively).

Q While working?

A Yes.

Q Then a couple of days later you informed Peg Sobek [sic]?

A No. The next day I informed her. Well, not the next day. What I am saying, they are not in the next day. That would be Monday I informed her.

Q That you hurt your back while you were working?

A Yeah. I even explained everything to her . . . .

R. at 18A–20A.

In light of claimant's testimony, we disagree with employer's assertion that the referee's determination of an unreasonable contest disregards the testimony of employer's lay witnesses. The referee, in her role as fact finder, simply resolved issues of credibility in favor of claimant.

In attempting to prove that its contest was reasonable, employer relies on the following

testimony of its medical witness, Dr. Paul L. Richter:

A   It was, in my opinion that she had a ruptured lumbar disk and HNP at the L5–S level, more to the left.

Q   And Doctor, following your complete evaluation, did you have an opinion within a reasonable degree of medical certainty as to the cause of this diagnosis?

A   Yes.   It was my opinion that the cause was when she was lifting the orange crates in 1989.

R. at 63A–64A.

■   This court recognizes that a reasonable contest exists when medical evidence is conflicting or subject to contrary inferences. *Majesky v. Workmen's Compensation Appeal Board (Transit America),* 141 Pa.Commonwealth Ct. 398, 595 A.2d 761, *petition for allowance of appeal denied,* 529 Pa. 653, 602 A.2d 862 (1991).   Here, however, all of the medical testimony supports the conclusion that claimant sustained a back injury while working for employer.   The medical experts disagreed as to which work-related incident caused claimant's injury, but all attributed claimant's condition to her job.   *See* R. at 63A–64A, 121A, 177A.

Assuming, *arguendo,* that Dr. Richter was correct in his opinion that claimant's injury resulted from the 1989 work-related incident, claimant still would be entitled to receive benefits from employer.   The issue of which work-related incident produced claimant's injury is relevant only for purposes of determining which insurer is liable.   *Morgan Corp. v. Workmen's Compensation Appeal Board (Strock),* 139 Pa.Commonwealth 520, 590 A.2d 1375 (1991).   Resolution of this issue has no bearing on the issue of whether claimant is entitled to compensation benefits. *See id.*

By failing to stipulate that claimant was injured in the course of her employment, employer prevented claimant from receiving compensation while the insurers litigated the issue of which work-related episode caused the injury.   In light of the foregoing, we agree with the referee's conclusion that employer's contest was unreasonable.

■   Next, employer argues that the referee committed an error of law in awarding 20% for attorney's fees without making specific factual findings concerning the amount and difficulty of the work performed by claimant's attorney.   We disagree.

■   The referee has the authority to determine what constitutes a reasonable fee. *Eugenie v. Workmen's Compensation Appeal Board (Sheltered Employment Service),* 140 Pa.Commonwealth Ct. 51, 592 A.2d 358 (1991).   His finding is a conclusion of law, subject to review by this court.   *Id.*   In cases where the referee makes no determination of reasonableness or where the record provides no insight as to the amount of work performed by claimant's attorney, it is necessary to remand for findings as to the amount and level of difficulty of the work performed. *See, e.g., Koszowski v. Workmen's Compensation Appeal Board (Greyhound Lines),* 141 Pa.Commonwealth Ct. 253, 595 A.2d 697 (1991); *Wommer v. Workmen's Compensation Appeal Board (Lycoming County),* 84 Pa.Commonwealth Ct. 275, 479 A.2d 661 (1984).   Nevertheless, a remand is unnecessary in this case.

In Finding of Fact No. 12, the referee stated: "The claimant and her counsel have a reasonable 20% fee agreement.   Your referee finds this fee to be appropriate for an award of counsel fees as costs, based upon the amount of work performed and the usual fee charge for this type of case in this area."

Having reviewed the record, we conclude that the referee did not err in determining that the award was reasonable and appropriate for the amount of work performed by claimant's attorney.

Accordingly, we affirm the order of the board.

### ORDER

NOW, this 17th day of April, 1995, the order of the Workmen's Compensation Appeal Board, dated June 1, 1994, at No. A93–2289, is affirmed.